Thank you, Your Honor, and may it please the court. I'll try to save two minutes for rebuttal. Mr. Hodges requests four categories of injunctive relief on behalf of Comcast, quote, cable subscribers. He wants them to be notified. He wants them to give consent. He wants to give them access to certain data. Every one of these categories of injunctive relief would benefit only Mr. Hodges and persons similarly situated, that is, Comcast cable subscribers. I have a background question. This is a cable provider. I assume that means that they're the exclusive cable provider for each area where they're the cable provider. Is that right? There are competition in most of the areas in California, Your Honor, so Comcast is primarily in Northern California, but they are not the exclusive cable provider in most parts of North California. As to actual cable as opposed to other things? Well, this case involves internet cable, I mean, all the other phone. Right, but as to TV cable? Correct, Your Honor. They're not the exclusive provider? They are in certain areas. They are not in other areas. All right, go ahead. Thank you, Your Honor. The access claims, Mr. Hodges says in his brief in footnote 5, pertain only to him individually. He doesn't assert those on behalf of any other person, so we can drop those out of the case. That leaves only the notice of consent aspects of the injunctive relief, and here's what he says at page 32 of the red brief, and I think it's an important quote. These requirements, quote, pertain only to cable subscribers. That is, the people who sign up for Comcast cable service and whose names are listed in Comcast records. In fact, he goes on, Your Honor, at page 28 of the red brief to make clear that his requests, his injunctive requests, are drawn specifically from the statutes he seeks to enforce, and this is important. I can't hear you. All of a sudden, the sound seems to have disappeared. Thank you, Judge. I can hear fine, so I don't know what that is. Continue and see what happens. Can you hear? Judge Van Dyke, can you hear me? I can. Well, you, I'm sorry. Judge Berzon, you've been cutting in and out a little bit, but Mr. Perry has been, I've heard everything he said, so. Okay. All right, I can hear again now. Very good. Thank you. Sorry. The statutes that Mr. Hodges seeks to enforce, Section 551 of the Cable Act and the California Cable Privacy Act in the Penal Code, both are limited to subscribers. They don't apply to anybody besides subscribers. The data at issue is only possibly collected from subscribers. Notice is only required to be given to subscribers and access could only be had by subscribers. All of this matters, Your Honor, to the distinction between private and public injunctive relief under California law. The California Supreme Court has been exceedingly clear that if the injunctive relief would benefit only an individual plaintiff or a group of persons similarly situated, it does not constitute public injunctive relief. That's from the McGill case at page 90. Can I ask one question about this, which to me is somewhat supervening. Didn't Blair versus Rent-to-Center essentially decide this, although briefly, in footnote three, where it says that Rent-to-Center alternatively argues that the McGill rule does not apply because Blair's requested relief does not amount to a public injunction. Not so. Blair seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public, and the circumstances were pretty much exact apparel. Well, not so, Your Honor, for a couple of reasons. First, it was not the focus of Blair by any measure. It wasn't even raised. What does it matter? There's a decision, there's a holding in the case. There's a footnote in the case, and the actual injunction sought in to prevent Rent-to-Center from offering the loan terms to the public, to any person from the public who walked into any one of its stores anywhere in California in violation of the Carnet Act. That was an outward-facing, public-facing request for relief that the court granted, and it was portrayed as such by the plaintiffs in their Blair responsive brief. That was exactly the point they made, was that anybody can go into a Rent-to-Center store in California and would be victimized by them. This is not, in our case, a public-facing injunction. It is an inward-facing injunction. It applies by its own terms only to those who have a contractual relationship already with Comcast, or who might in the future choose to enter into that contractual relationship. It has nothing- Well, that second part of it, let me ask you about that. Those who might enter in in the future, they're not part of the class. So to that extent, the relief sought would extend beyond class members. Why doesn't that feature make it into something on behalf of the general public? Well, Your Honor, that's true, of course, in every injunctive relief case. If we're going to look forward, the class typically cuts off at the date of either the complaint or the judgment for due process reasons. We can't bind future persons to a judgment. That's a function of class action law and due process, but the injunctive relief runs forward and benefits other persons. That isn't necessarily so in either way, either aspect of that. Some classes do cover future people, or at least say they do. And I'm not sure that really can do that, but they claim to do it. And on the other hand, the injunctions can often be limited to writing past wrongs or to writing wrongs for the class as opposed to for other people. Here, Your Honor, future Comcast subscribers would become essentially class members. Defined not as terms of class action law, but in terms of McGill, individuals similarly situated to the plaintiff, they would enter into a contractual relationship with Comcast. And it is the nature of that contractual relationship, the relationship between the company and its particular customers rather than the public at large, that is an issue in this case. This isn't an advertising case. This isn't an open... But there are also people who have to decide whether to enter into a contract with Comcast in the future, right? And what this term is could matter to those people, whether they're actually entered into the contract or not. Your Honor, that wouldn't be enough to make it a public injunction. The public injunctive relief, the narrow, narrow subset of public injunctive relief under the California Supreme Court's decisions has to apply literally to the general public. Otherwise, every... But wait a minute. You just told me, Adam Blair, it was the public because anybody could walk in. And in that respect, this is also the public because anybody could wish to contract with Comcast and want to know and want to be assured what their privacy rights were. And the injunctive relief sought in this case, Your Honor, would not apply until after the contract is entered into and those future persons, just like current and former persons, become Comcast subscribers. The relief sought follows the claim. It is limited to subscribers. It's not potential subscribers. It's not the general public. It is a very limited, defined class of contractually related... But functionally, it's potential subscribers because the potential subscribers are. Your Honor, think of the access claim. A future subscriber doesn't have any data to access. It doesn't make any sense. It only applies... But they're concerned about having data that could be accessed. And therefore, when they're deciding whether to sign up with Comcast or not, the fact that they have a choice... And this is one of the reasons I asked the exclusivity question earlier. If they have no functional choice in some places, as you said, that is, if they want cable, they either have Comcast or nothing, then they certainly have an interest in what the contractual terms are going to be. And Your Honor, of course, they have choices besides cable, satellite, and other providers. But that kind of analysis, that mode of analysis leads to the conclusion that every injunction... And Mr. Perry, Mr. Perry, if this concept that anybody in the future necessarily means is public, wouldn't Clifford have come out different? Because there, you've got... It seems to me like Clifford is our sort of on-point case from the California courts that we can look at. And Clifford involves employees, and you're trying to get this injunctive relief to help employees. And it seems to me that Clifford would come out... If I'm trying to decide whether to go to work for Quest, whether or not they have this relief or not, if I'm not an employee already, could influence my decision. But Clifford said that's not public injunctive relief. Absolutely, Your Honor. And from this court, the Kilgore case is in the same line, same vein of reasoning. Not all injunctive relief is public injunctive relief. If I could reserve the balance. It's certainly true that not all injunctive relief is public injunctive relief. Kilgore is an example. And it's an example because there was no way that was going to influence anybody but the members of the class for their retrospective wrongs, even though it was prospective relief. So there's an example. So it doesn't help. I mean, I don't think this is a clear case one way or another, but it doesn't help to exaggerate the impact. Your Honor, let me, if I could, make the importance of Kilgore because it goes to the court's footnote three question. Blair did not hold and could not have held that every injunctive request under the UCL is public because... Oh, it didn't. And that's why you're exaggerating with every sentence you say as to the fact that if it applies outside the class to future situations, that's every injunctive relief. It isn't every injunctive relief. It's some injunctive. Thank you, Your Honor. Good morning. May it please the court. Carla Gilbride on behalf of Brandon Hodges. The complaint here sought two types of relief damages for Mr. Hodges and a class of current and former residential cable subscribers who were harmed by Comcast's violations of SIPA and the Cable Act and an injunction preventing Comcast's ongoing violations of those statutes from injuring yet more Californians, requiring Comcast to fully disclose its privacy terms to potential future subscribers. Counselor, Ms. Gilbride, you said from injuring yet more Californians, but the injunctions actually do benefit this same class, right? It's not like the injunctions are separate and only for future subscribers. The injunctions don't even address future subscribers. They just address subscribers, right? So they benefit the entire class that is the same class that has Mr. Hodges, right? It's just that they might have, to quote McGill, it seems like their primary purpose is affecting this class. They might have a future sort of effect that affects other people, right? But I mean, McGill addresses that. It says that the primary purpose has to be, if the primary purpose is to prevent injury to a group of individuals similarly situated to the plaintiff, then that's not public injunctive relief. So the key issue here, I think is, and as you heard from talking to your opposing counsel, the key issue is why does the fact that it might incidentally affect people in the future, which is true, I think I agree with your opposing counsel that it's generally true. I mean, we do have the strange case of Kilgore where the person went out, where the company went out of business. But other than a company going out of business, typically speaking, injunctive relief will affect and will help people in the future, just like it would help future employees in the Clifford case. So that seems to be the key issue for me, is why the incidental effect of helping future people that might decide to join the class, why that somehow makes it public injunctive relief. And if it does, it isn't when California in the McGill case says public injunctive relief, don't they just mean injunctive relief? No, that isn't what McGill meant in California in that decision. But if there's any doubt as to where the California Supreme Court did draw the line between private injunctions and public injunctions in McGill, then it's our position that this court should certify that question to the California Supreme Court. That wasn't my question, counsel. That wasn't my question. My question, and I understand that that's what you'd like us to do. If we, you know, we're not going to rule in your favor, but my question is, like I said before, I'll ask it again, since if there is a, an injunction and the injunction seems to be targeted at the same group, the same class of people, whether it's employees in Clifford or whether it's Comcast subscribers here, if it's targets, those people, just the mere fact that somebody can join that class later. In other words, it's like fishing a net, right? Is the injunctive relief attempting to like all of these advertising cases from the California courts, the Cruz case, the McGill case, they all involve advertising. That's like the quintessential public facing injury that you're trying to stop here. You're trying, the main part of the injunction is trying to stop injury to people in the class, in this class. And the fact that people might join the class later, if that's enough to make a public facing relief or public relief, then why isn't, why isn't every injunction public? Really? That's what I, that's the question I need you to answer. Why isn't every injunction public relief? If all you have to do is have one person, one person who might join the class later is enough to make it happen. If that's the case, I, the California Supreme court, essentially they called it public injunctive relief, but it's just injunctive relief. It's a special rule for injunctive relief. There are different types of injunctive relief, your honor. And let's look at the Wright versus Sirius XM case and then contrast it with what is at issue here in the Wright versus Sirius XM case. Let me make it clear. You say there's different types of injunctive relief, but it is, it is all of the injunctive relief here affects the class of cable subscribers. Is that not correct? The injunctive relief targets future violations of the statutes, future disclosures. They're requiring consent. Hold on, hold on. I'm not going to let you off that easy. I'm not going to let you off that easy. And what will, who are those future violations of the statute affect? Will they affect people who have not yet moved to California, but might in the future, people who are living in one part of California and would not be part of the class. You might move to one of the neighborhoods. Wait, I'd like to hear Ms. Judges on just second. Now, are you talking about people that have not yet moved to California, but will, but will become cable subscribers in the future? Is that what you're talking about? Or who might consider becoming Cal who might consider becoming Comcast cable subscribers, but after reviewing Comcast's publicly available privacy policy, if that privacy policy was accurate and fully disclosed all of the information about the information Comcast collects, they might choose not to become Comcast subscribers. Like the employees in Quest, correct counsel, like the employees in Quest. If I'm thinking about becoming an employee of Quest in Clifford, in the Clifford case, I might look at it and go, wow, I don't know if I want to become an employee of Quest with these sort of a wage and hour violations. So it seems to me, it's the exact same situation as in Clifford. The difference between this case and Clifford is that the statutes here go to the informational harm and the informational interest that we're future, you know, for members of the public who would be covered by the injunctive relief. The wage and hour statutes in Clifford don't go to that, the heart of that informational harm, but full disclosure of privacy policy so that people can make an informed decision about whether they want to have cable service under those conditions is what the California legislature was concerned about when it required advanced written consent under SIPA and what the Congress was concerned about when it required advanced written consent and for cable providers to make that information available when people request it. I want to go to something that opposing counsel said about the access. Let me ask you a follow-up question about that then. You say it goes to informational harm, but I just don't see how that's distinguishing. At the end of the day, all this injunctive relief has to do with cable subscribers being harmed because they are having their data misused. And it seems to me that the analogy of that would be that employees being harmed because they're not being treated right under the wage and hour. You can call it informational harm, but the same thing would be true in Clifford. You'd say, well, we're trying to make sure that people that want to become an employee in the future would know what they're doing. So I don't see, it's not actually informational harm directly. The actual thing you're trying to get injunctive relief to help is the fact that these cable subscribers' data is being misused. Isn't that correct? Two points, Your Honor. One is that it's not just the cable subscribers' data that is being collected. It's also anyone in their household who watches Comcast Cable under that subscription. Okay, counsel, if you're underpaying somebody or if you're not paying them correctly, you're affecting everybody in their household that depends on that wage. It just seems like, wow, if that's the argument, that's just as far-reaching than the fact that future harm somehow to a class of people, the fact that people may join, somehow makes it public-facing relief. Well, again, there are multiple components to the relief that we're seeking, and those components primarily are forward-looking because they go to future violations of California consumer protection laws, as Blair mentioned in footnote three. They're not talking about remedying people who were already harmed, which was the relief issue in Wright v. SiriusXM. That was an injunctive relief. It sought something going forward, but what it sought was that Sirius stop charging prices for the lifetime subscriptions that it wasn't honoring and to honor previously purchased subscriptions. So that is the quintessential circumscribed class of only people who have purchased the product in the past and were harmed by the misrepresentations and the injunction. I was going to ask you about Wright, but the first example you gave does seem to me to be similar. The second, I understand, is not similar, but the first one, presumably, stop charging X, would it apply to future customers as well? Perhaps if the plaintiffs in Wright had framed the injunctive relief differently, but what they actually sought was to stop charging these fees to plaintiff and members of the class, like as written, the injunctive relief there was private. If this case goes forward, would the injunctive relief be sought as a B2 class, or how would it be done? So under the unfair competition law in the United States, it was sought outside of the context of a class action. In fact, in McGill, the California Supreme Court said that for the type of public injunctive relief that was being sought by Ms. McGill on behalf of future customers or potential customers of Citibank, it was not a representative action, which would require the class action devices of 382. Are you seeking a injunctive request that would not be available in a B2 class? And if so, what exactly is that additional portion that would not be captured by a B2 class? Because the benefits of this injunction run to the general public at large, it can be broader than what might be ascertainable or certifiable as a class. As I mentioned before, it could be people who contemplate subscribing to Comcast, and after learning all of the full information about Comcast's policies, they choose not to do so. You know, that's a subjective determination that they would be making, but that is the sort of relief that California's legislature has authorized under the unfair competition law, the false advertising law, the Consumer Legal Remedies Act, for people who have been harmed by an unlawful or deceptive practice, like Comcast's privacy violations here, to prohibit ongoing future violations of that statute from harming the general public. Does it matter? See, what you're saying is that you could, in the end, ask for an injunction that says something like, with regard to offerings made to the general public, Comcast shall make clear that its data policies are X, Y, and Z. But that's not in the complaint. You're saying that that doesn't matter? Sorry, Judge Berzin, I'm not sure if that's your question. That's not in the complaint, right? In other words, the complaint isn't framed that way. You'd think that you could get relief like that, which specifically goes to future customers and disclosures to future customers. Maybe this is just a problem of amending the complaint or something, but it's not in the complaint as such now. We do have several specific counts of injunctive relief that we seek, which are modeled on the requirements of both CIPA and the Cable Act, and I just wanted to, in that regard, clarify one misstatement by opposing counsel who said that our access claims were only brought individually on behalf of Mr. Hodges. I believe he was referring to counts C and F of the injunctive relief, which talk about destroying data that Comcast already has in its possession, as they do have for Mr. Hodges. But the points of injunctive relief sought in D and G, which require Comcast to provide access to all of the personally identifiable information upon request, would inure to the benefit of future and potential subscribers as well, not just to Mr. Hodges. What I was asking was, could you get relief specifically directed at future subscribers, if you proved your case under UCL? I know that you've asked for certain relief, but in general, one can get whatever, when you get to the point of actually devising an injunction, you can get whatever relief is appropriate. I don't know if you have a catch-all, but usually a complaint is drafted with a catch-all. Yeah, as you said, the class would only cover current and former subscribers, but certainly that is something that could be expanded upon amendment of the complaint. I see my time has expired, unless the court has further questions. Can I ask a further question, Judge Brizant, related to what the one you just asked, Judge Brizant? It's a little odd, because McGill, Rotten, however you say it, and Cruz, they're all in the advertising context, which is why we're talking so much about advertising, because advertising is sort of the quintessential, it's sort of the paradigmatic example of public relief, because you're trying to catch more fish in your net, so to speak. Judge Brizant's question, it would be a little bit odd here. I could totally see saying, when somebody signs up, for their cable, you have to give them more disclosures or something like that here. But it would be weird to just say, whenever you advertise Comcast services, you have to, like, to the public, you have to add a thing, this is how we're going to use your data. It'd be like a five, a 10-second, really fast thing nobody could understand at the very end of it, saying, we will use your data this way, blah, blah, blah. It seems to me that that'd be weird and not something, I think that was what Judge Brizant was kind of getting at, not to put words in their mouth, but like, that seems to me how you would shoehorn this into the McGill, Cruz, et cetera, cases, whereas it seems to me that those kind of disclosures would make more sense in the context of somebody who's actually already signing up, and then maybe you give them lots of disclosures as far as the kind of stuff, the relief you guys are talking about. But that's kind of, that's what I understood Judge Brizant to be asking is, would you have the McGill-type to the general public? Does that fit in a case like this? I didn't really hear whether or not that does fit. I have two quick responses to that. One is that Comcast's privacy policy, which is where this information should be disclosed, is publicly available on the internet. We cite to it, or a previous version of it, in the complaint at page 96 of the excerpts of record. So this is a disclosure action, or the relief we seek is fulsome disclosures akin to the advertising cases. And the second point I would make is that not all actions for public injunctive relief under California law involve false advertising, Blair being a paradigmatic example of that. And so again, I would ask that the court either affirm or certify the question to the California Supreme Court. One last question. You don't seem to be relying very heavily on Blair. You don't think it's controlling? I do think it's controlling, Your Honor. Certainly, it's controlling on this question. I believe footnote 3, which you cited to you, Your Honor, is controlling of the question. The key language in footnote 3 is that the action seeks to enjoin future violations. I noticed that, and I thought it was controlling, but neither of your briefs are here. Are you... No, I mean, it's in our brief, and certainly if the court finds it that simple and wants to rely on footnote 3, we would be perfectly happy with that, Your Honor. Okay, thank you very much. Mr. Perry, as Ms. Gilbride went over quite a lot, you can have three extra minutes. Go ahead. Thank you, Your Honor. Paragraph 46 of the complaint at ER 104 makes clear that this plaintiff is proceeding only under the unlawful prong of the UCL, which then picks up another statute. On notice, there are only two statutes, the federal law and the state law. The statutes go to the harm and interest at issue, and that the legislature has made the decision about the scope of relief, and the federal cable act in section 551 could not be clearer that the notice required, which is sought to be enforced by this injunction, is limited to cable subscribers. It does not go to the public. It does not go to anybody beyond subscribers. It does not go to future subscribers. When, in other words, when I'm signing up, presumably I'm signing a contract, and do I get the notice then? What do the statutes require? When do I get the notice? The statutes require the notice to be given at the time of subscription and every year after that. It is available on the website if anybody wants to look at it, but it is not a public notice requirement. It is a subscriber notice requirement. It's given at the time of contracting. This was a very deliberate determination made by the Congress. This is not an advertising requirement or a disclosure requirement. It is a... But I'm walking in to a Comcast office, which nobody does anymore. I'm going online. I'm trying to decide whether to sign up, and so I look at the terms, which includes this, and at that point, I get this data disclosure, right? Yes, Judge Brisson. And at that point, I'm not a subscriber. I'm a potential subscriber. Your Honor, the statute says at the time of entering into an agreement, the cable provider shall provide to the subscriber. It is a... Presumably, that means they can wait until I've already signed and then give it to me? Correct, Your Honor. Absolutely. It is a term of the contract for contracting parties. This is not... Well, that's right, but when you sign a contract, you look at the contract before you sign it. So presumably, I get it before I sign it. So, Your Honor, an injunction requiring Circuit City to include a particular term in its employment contracts with employees would not be a public injunction. It would be an injunction directed at Circuit City for its employment contract. I mean, there is one obvious difference, which is this Comcast is dealing with millions of people, not tens or hundreds or thousands, right? Whatever that's worth. It seems a lot more like the public in that respect, but still, it's... Well, go ahead. Your Honor, it's... Also, this is publicly available, and I don't know whether people usually... I guess it's not in the record either, whether people usually sign up online or probably so. So, it's probably where this document is, is where people would see it. Mr. Perry, I think your time is up, but I have one question that's related to the last question that Judge Rezaan asked your opposing counsel. And that, you know, the footnote three in Blair, I'm curious to see and hear what your position is. It says, the last sentence in that is, Blair seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public. It's one sentence there. I'm trying to figure out, is... Does Blair... Do you read Blair as standing for the proposition, A, that all it takes is that if you're enjoining future violations, that's enough to be public injunctive relief? And if not, then what is the... So, that cannot be the answer, Your Honor, because Cruz, of course, was a future violation case arising under the UCL and the California Supreme Court drew the exact same distinction between public and private injunctions. It's very clear the public injunctions are a small, narrow subset of all injunctions. The Blair footnote was describing the facts of that case, which as I've described, were the rental contracts available to the public. Every case has to be found at page 90 of McGill. Relief that has the primary purpose or effect of preventing injury to an individual plaintiff or a group of individuals similarly situated to the plaintiff does not constitute public injunctive relief. That is this case. That is why the decision should be reversed in this claim sent to arbitration, whatever might happen in some other case. Thank you, Your Honor. Can I ask one last question? What is your position on certifying the issue to the California Supreme Court? Your Honor, we don't think there's anything to certify. The standard under both this court's precedents and the California rules of court is that the issue has to be unresolved by the state court. The combination of Broughton, Cruz, and McGill make clear that if public injunctions aren't limited to advertising cases, which all of those cases involve, it's something awfully close to advertising because they all were very careful to draw that distinction between public and private injunctions. And this case we think is controlled by those. It's outside the scope of the public injunctions under anything the California Supreme Court has held. There's no reason to certify. It's simply not a public injunction, and therefore, this case should proceed to arbitration. I think, oh, there she is. But you may finish. Thank you. I didn't hear the very last thing you said. I'm sorry, Your Honor. We had a glitch there. What I said... My computer has this habit of just cutting out. It's not the internet. It's the computer every so often, and I've been trying to troubleshoot, and I haven't been able to and controlling public injunctions or those advertising, public-facing, outward-facing requests for relief. This is not that. This is a very carefully circumscribed claim for narrow internal relief. No need for certification. Simply send the case to arbitration. Okay. It would be helpful to me to tell me one more time why you think that footnote in Blair is not controlled. Your Honor, the footnote in Blair... Blair was about offering rent-to-own plans for a household, about charging excessive prices for rent-to-own plans for household items, right? True, anybody can enter into that agreement. Anybody can enter into this agreement, but it has to do with charging excessive prices. So what's the difference? Your Honor, the claim in Blair, the contention in Blair was that the terms on which the company offered the price were excessive in light of the California Cornette Act. And the contention here is that the terms on which they are entering were illegal because their data plan was illegal. But, Your Honor, the key distinction is Blair sought to force the company to change its pricing, its rates and purchase price options going forward for anybody who walked into the store in the future, and the current plaintiff wouldn't have benefited from that injunction. This injunction requested here at ER 10506 requests consent and access and notice that only go to subscribers. The plaintiff would benefit directly. In fact, the plaintiff won't get any of this without the injunctions that under Broughton Footnote 5, that makes it private, not public. And it's limited to this group of people who already are within the contractual relationship rather than those who in the future might enter into it. So it's two totally... The way for questioning Blair did not benefit the plaintiff class. They were going to get the better price. That's correct, Your Honor. She'd already paid for her Xbox. It was in the past. She was suing literally for a future change for something that would affect other people. He had bought a used Xbox and already paid it off. She was suing to change the rules on a forward basis. All right. Thank you. I need to check that out. It seems unlikely. Thank you. Thank you, Your Honor. Okay. So the case of Hodges versus will go to the next case, which is Austen versus Saul.
judges: Berzon, Collins, Vandyke